1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 20, 2021

SEAN F. McAVOY, CLERK

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7  WILDEARTH GUARDIANS;
   WESTERN WATERSHEDS                NO:  2:20-CV-440-RMP
8  PROJECT,

9                     Plaintiffs,    ORDER DENYING PLAINTIFFS'
                                     MOTION FOR PRELIMINARY
10        v.                         INJUNCTION

11 KRISTIN BAIL, Okanogan-
   Wenatchee National Forest, Forest
12 Supervisor, and U.S. FOREST
   SERVICE,

13                     Defendants,

14
   and
15
   S. MARTINEZ LIVESTOCK, a
16 Washington Corporation,

17                Defendant-Intervenor.

18

19        BEFORE THE COURT is Plaintiffs WildEarth Guardians ("Guardians") and

20 Western Watersheds Project's ("WWP") Motion for Preliminary Injunction, ECF

21 No. 18.  Pursuant to Fed. R. Civ. P. 65, Guardians and WWP (collectively

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION ~ 1

1   "Plaintiffs") seek to enjoin Defendant United States Forest Service ("Forest

2   Service") from authorizing domestic sheep grazing on certain allotments (the

3   "Wenatchee Allotments") within the Okanogan-Wenatchee National Forest (the

4   "Forest") while this case is pending, and before the 2021 grazing season commences

5   this spring.  ECF No. 18 at 7–8.  The injunctive relief sought here by Plaintiffs is

6   limited to the Nile, Rattlesnake, Mosquito Ridge, and Manastash allotments.  ECF

7   No. 41 at 5 n. 1 (citing ECF No. 26-10 at 4–5).  Defendant Intervenor S. Martinez

8   Livestock ("Martinez Livestock") is a ranching business that holds grazing permits

9   for the Wenatchee Allotments, including for the upcoming 2021 grazing season.

10   ECF No. 26-10 at 4–5.

11          On April 5, 2021, the Court heard oral argument by video conferencing.  Ms.

12   Elizabeth Potter appeared on behalf of Plaintiffs.  Assistant United States Attorney

13   John Drake represented Defendants Kristin Bail and the Forest Service (collectively

14   the "Federal Defendants").  Ms. Caroline Lobdell and Mr. Scott Horngren appeared

15   on behalf of Defendant Intervenor Martinez Livestock.

16          The Court has considered the motion, the record, heard oral argument, and is

17   fully informed.

18                                    **BACKGROUND**

19          The Washington Department of Fish and Wildlife ("WDFW") estimate that

20   approximately 1,700 bighorn sheep in sixteen herds remain in Washington state.

21   ECF Nos. 19-15 at 5, 19-16 at 5.  Some of these herds have core home ranges in

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION ~ 2

proximity to or that overlap with the Okanogan-Wenatchee National Forest.   ECF

No. 19-17 at 3.   The Forest Service has allowed Martinez Livestock to graze

domestic sheep on nine allotments within the Forest, and authorized grazing for the

upcoming 2021 season.   ECF Nos. 25 at 4, 26-10.   Domestic sheep can be carriers of

*mycoplasma ovipneumoniae* ("*movi*"), a bacteria that if transmitted to bighorn sheep

can lead to pneumonic disease.   ECF No. 28 at 6.

Domestic sheep grazing on the Wenatchee Allotments is governed by (1)

Allotment Management Plans;[1] (2) Annual Operating Instructions;[2] and (3) the

management objectives set forth in the land and resource management plan for the

Forest (the "Forest Plan").   ECF No. 25 at 4.

In February 2016, the Forest Service completed a Risk of Contact ("ROC")

model analysis for the Forest.   *See* ECF No. 19-23.   The ROC model uses bighorn

sheep locations, movement data, and the habitat layer to estimate the rate of contact

between bighorn sheep and a domestic sheep allotment boundary.   ECF No. 28 at 7–

---

[1] An allotment management plan ("AMP"): (1) prescribes the manner in and extent to which livestock operations will be conducted to meet multiple-use and other needs and objectives; (2) describes general specifications for the range improvements in place or to be installed; and (3) contains other grazing management provisions and objectives.   36 C.F.R. § 222.1(b)(2).

[2] Instructions for operations issued to the permittee annually which are "responsive to conditions that the Forest Service could not or may not have anticipated and planned for in the AMP or grazing permit."   *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 980–81 (9th Cir. 2006).

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION ~ 3

8.  The ROC model does not evaluate the risk of disease transmission nor consider on-the-ground actions that have been taking place to reduce the risk of contact.  *Id.*

In 2019, the Forest Service started a new National Environmental Policy Act (NEPA) process for the planning and management of domestic sheep and goat grazing within the range of bighorn sheep to better provide for forest-wide bighorn sheep viability.  *See* ECF No. 19-26.  First, the Forest Service is revising the Forest Plan.  *Id.*  The final environmental impact statement ("EIS") is expected in November 2021.  ECF No. 19-28 at 3.  After the Forest Service revises the Forest Plan, "subsequent analyses would be conducted to evaluate conditions relative to risk of contact and ability to mitigate risk at the allotment scale."  ECF No. 19-29 at 2.

Plaintiffs contend that there is a high risk of disease transmission between domestic sheep and bighorn sheep herds, affecting the latter population's viability.  *Id.* at 8.  Plaintiffs allege that despite being aware of these risks, the Forest Service has continued to authorize grazing on the Wenatchee Allotments, rather than closing these allotments, while new environmental analyses are completed.  *Id.* at 8–9.  Plaintiffs argue that by continuing to authorize domestic sheep grazing, the Forest Service has violated its duties under the National Forest Management Act (NFMA) to protect bighorn sheep populations, and its duties under NEPA to supplement outdated analyses and prevent an irreversible commitment of resources in the interim.  *Id.* at 9.  Plaintiffs have stated the following claims for relief pursuant to the

judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 706:

    (1) The 2016–2020 and upcoming 2021 Annual Operating Instructions ("AOI"), authorizing domestic sheep grazing, violate NFMA regulations because the AOIs are inconsistent with the Forest Plan and the directives therein;

    (2) The Forest Service has failed to prepare a supplemental analysis at least nine years after it recognized new information relevant to environmental concerns in violation of NEPA; and

    (3) By authorizing grazing through 2017–2021 AOIs, the Forest Service has made and continues to make an irreversible or irretrievable commitment of resources in violation of NEPA.

*See* ECF No. 1 at 37–44.

On February 26, 2021, Plaintiffs filed the present motion seeking to enjoin domestic sheep grazing on the Wenatchee Allotments, more specifically on the Nile, Rattlesnake, Manastash, and Mosquito Ridge allotments, while this matter is pending.  *See* ECF No. 18.

The Federal Defendants contend that there is no evidence showing that a disease outbreak among bighorns has been caused by domestic sheep from the federally managed allotments, as opposed to domestic sheep on private or state-owned land.  ECF No. 25 at 2.  The Federal Defendants further contend that the

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ~ 5

1  Forest Service's best management practices have effectively mitigated the risk of

2  disease transmission dating back to 2012.  *Id.*

3  **STANDARD OF REVIEW**

4  Courts may issue preliminary injunctions to prevent immediate and

5  irreparable injury.  Fed. R. Civ. P. 65.  Case law emphasizes that a preliminary

6  injunction is an "extraordinary and drastic remedy" that may be granted only upon a

7  "clear showing" that the movant is entitled to such relief.  *Mazurek v. Armstrong*,

8  520 U.S. 968, 972 (1997).

9  A party seeking a preliminary injunction must make a "clear showing" that:

10  (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in

11  the absence of preliminary relief; (3) the balance of equities tip in its favor; and (4)

12  an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555

13  U.S. 7, 20 (2008).

14  In the Ninth Circuit, courts weigh these factors "on a sliding scale, such that

15  where there are only serious questions going to the merits—that is, less than a

16  likelihood of success on the merits—a preliminary injunction may still issue as long

17  as the balance of hardships tips sharply in the plaintiff's favor and the other two

18  factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (internal

19  quotations omitted).  However, even where there are "serious questions" going to the

20  merits, the plaintiff must still demonstrate a likelihood of irreparable harm and that

21  an injunction is in the public interest.  *Alliance for the Wild Rockies v. Cottrell*, 632

F.3d 1127, 1135 (9th Cir. 2011). "Under any formulation of the test, the plaintiff must demonstrate that there exists a significant threat of irreparable injury." *Oakland Trib., Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir.1985).

For the reasons set forth below, the Court finds that Plaintiffs have not made a "clear showing" that there exists a significant threat of irreparable injury in the absence of injunctive relief. Because Plaintiffs have not made that minimum showing, the Court need not decide whether Plaintiffs are likely to succeed on the merits of their NFMA and NEPA claims.

## DISCUSSION

### A. Irreparable Harm

Plaintiffs argue that absent an injunction prohibiting grazing on the allotments, the Wenatchee and Yakima meta-populations of bighorn sheep will continue to be susceptible to the transmission of disease from domestic sheep. ECF No. 18 at 45. "This means Plaintiffs' members are less likely to view bighorns when they visit and thus likely to enjoy their visits less when they are there." ECF No. 18 at 43 (citing ECF Nos. 23 at 4–7, 24 at 7–16). The Federal Defendants contend that Plaintiffs have not shown that the irreparable harm alleged is causally related to the Forest Service's conduct. ECF No. 25 at 35–37.

Plaintiffs seeking preliminary relief must demonstrate that irreparable injury is likely in the absence of an injunction, not merely that it is possible. *Winter*, 555 U.S. at 22 (rejecting Ninth Circuit's "possibility" standard as too lenient). "Issuing a

preliminary injunction based only on a possibility of irreparable harm is inconsistent

with our characterization of injunctive relief as an extraordinary remedy that may

only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.*

(citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)).  As noted

above, "plaintiff must demonstrate that there exists a significant threat of irreparable

injury." *Oakland Tribune, Inc.*, 762 F.2d at 1376.

### 1. *ROC Model*

Plaintiffs assert that irreparable harm is likely to result absent a preliminary

injunction because if domestic sheep grazing continues on the allotments at issue,

domestic sheep are more likely to contact bighorn sheep herds, and this contact may

result in the "transmission of deadly pathogens from domestic sheep" to bighorn

sheep.  ECF No. 18 at 44.  Plaintiffs primarily rely upon data from the Risk of

Contact ("ROC") model, published in February 2016, to support a likelihood of

contact between domestic sheep and bighorn sheep on the Nile, Rattlesnake,

Mosquito Ridge, and Manastash Allotments.  ECF No. 20 at 21–23.

"A ROC model is a quantitative means of assessing the probability of a

foraying bighorn ram or ewe contacting an active domestic sheep grazing

allotment."  ECF No. 28 at 7.  "The ROC model does not evaluate the risk of disease

transmission." *Id.*  Rather, it is "a starting point for quantifying one element that

may influence bighorn viability."  ECF No. 20 at 21

1    To the extent Plaintiffs rely upon the ROC model to establish the likelihood of

2 irreparable harm, the Court finds this reliance unpersuasive for two reasons.

3    First, although the Court does not reject the utility of the ROC model as a

4 "geospatial tool" used to estimate a rate of contact on allotments, the Court

5 nonetheless recognizes its limits as "one data point for analyzing the risk of disease

6 transfer." ECF Nos. 20 at 4, 28 at 7. "Although it may not directly equate to

7 interactions between bighorn and domestic sheep, the Risk of Contact Model

8 provides outcomes that describe contact rates between bighorn sheep and allotment

9 boundaries." ECF No. 19-23 at 11. In other words, the contact being measured by

10 the ROC model is that between bighorn sheep and an allotment boundary; any

11 subsequent interaction with domestic sheep is an assumption based on the bighorn

12 sheep's proximity to the allotment. *See id.* ("If we assume a moderate probability of

13 a contact with an allotment resulting in an interspecies contact that will result in a

14 disease transmission outbreak event (0.25), then we would need to see a rate of

15 contact of <0.08 contacts per year") (in sum, the ROC model assumes one of every

16 four bighorn sheep contacts with an allotment (0.25) will result in an interspecies

17 contact, which will then result in a disease transmission outbreak event). Thus, not

18 every contact with an allotment boundary will lead to interspecies contact or disease

19 transmission. ECF No. 19-31 at 8 (Plaintiffs' expert Dr. Thomas Besser stating in

20 2013 that "many contacts between domestic sheep and bighorn sheep aren't long

21 enough or close enough to result in Movi transmission.").

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION ~ 9

1    Although Plaintiffs argue that the ROC model results actually underestimate

2    the risk to bighorns because "[t]he model does not evaluate the potential risk of

3    domestic sheep moving to bighorn core range," ECF No. 20 at 21, the model also

4    does not "consider on-the-ground actions that have been taking place to reduce the

5    risk of contact (including reduction of domestic sheep band size, changing of

6    routing/training, etc.)." ECF No. 28 at 7.

7    Second, Plaintiffs rely on data issued over five years ago to support a

8    likelihood of imminent harm absent an injunction. ECF No. 19-23 at 2. Defendants

9    argue that Plaintiffs' delay in seeking injunctive relief "belies a lack of urgency" and

10    Plaintiffs' request "on the eve of grazing turnout further undermines their claim of

11    irreparable harm." ECF Nos. 25 at 35, 31 at 3–4.

12    It is generally recognized that a "long delay before seeking a preliminary

13    injunction implies a lack of urgency and irreparable harm." *Oakland Trib., Inc.*, 762

14    F.2d at 1377. A plaintiff's delay in seeking relief is not determinative, but it is

15    nonetheless a factor in evaluating the likelihood of irreparable injury. *Arc of Cal. v.*

16    *Douglas*, 757 F.3d 975, 990 (9th Cir. 2014).

17    Plaintiffs argue that any delay was prudent because they "did not anticipate

18    that the agency would drag its feet on the new NEPA for so long; first attempted

19    informal means to address the problem; filed suit only after their expert visited the

20

21

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION ~ 10

allotments and confirmed that new evidence[3] made irreparable harm more likely and severe; and tried to confer about 2021 grazing plans first." ECF No. 41 at 20–21.

Plaintiffs rely on data issued in the 2016 ROC model to support a likelihood of imminent irreparable harm occurring during the 2021 grazing season absent interim relief; yet the practice they seek to enjoin has still continued to take place over the past five years since the data was issued. Martinez Livestock has been permitted to continue domestic sheep grazing on the Wenatchee Allotments over each of the past five years, subject to requirements set forth in the AOIs that arguably have sought to protect bighorn sheep in the interim. ECF No. 1 at 37–38; *see also* ECF No. 33 at 10 ("For example, in 2019 the Forest Service cut Martinez Livestock's use of the Mosquito allotment short by ten days due to a reported bighorn sheep sighting in the area located some distance off the allotment."); *see also Or. Natural Desert Ass'n*, 465 F.3d at 980–81 ("Because an AOI is issued annually, it is responsive to conditions that the Forest Service could not or may not have anticipated and planned for in the AMP or grazing permit, such as . . . degree

---

[3] This "new evidence" refers to Plaintiffs' expert Tim Schommer's visit in November 2020 to the Tieton, Cleman Mountain, Umtanum, Swakane, and Chelan Butte bighorn sheep ranges and adjacent domestic sheep allotments to "re-familiarize" himself with these areas. ECF No. 20 at 7. Mr. Schommer's observations "confirmed [his] prior conclusion that domestic sheep allotments on [the Forest] pose a high risk to these bighorn herds and greater spatial separation is needed to protect these bighorn populations from further disease impacts." *Id.*

of risk to threatened or endangers species affected by grazing.").  Thus, the Court

finds it difficult to reconcile the delay in seeking relief with Plaintiffs' position that

the potential harm caused by grazing activities "can result from even one or two

instances of contact between the species."  ECF No. 18 at 11; *contra Arc of Cal.*,

757 F.3d at 990–91 ("[W]aiting to file for preliminary relief until a credible case for

irreparable harm can be made is prudent rather than dilatory.").

## 2. *Case Law*

Plaintiffs also cite to several cases where the court, in considering a motion to

enjoin domestic sheep grazing, found a likelihood of irreparable injury with respect

to the viability of bighorn sheep populations.  *See Western Watersheds Project v.*

*Bureau of Land Mgmt.*, Civ. No. 09–0507–E–BLW., 2009 WL 3335365 (D. Idaho

Oct. 14, 2009) (enjoining grazing to prevent potential disease transmission to the last

remaining native population of bighorns in the state); *see also Western Watersheds*

*Project v. U.S. Forest Serv.*, Case No. 1:17-CV-434-CWD, 2017 WL 5571574 (D.

Idaho Nov. 20, 2017) (finding likelihood of irreparable harm from grazing on the

Snakey and Kelly Canyon allotments, approximately 10-12 miles from South

Beaverhead herd's core home range, where

herd's small size made it "especially vulnerable to die-offs caused by disease" and

//

//

Forest Plan contemplated closure of allotments at "a suitable or favorable time").[4]

Although other courts have found a likelihood of irreparable harm based on the proximity between domestic sheep grazing on allotments and bighorns, those findings are specific to the factual underpinnings of that case. Here, "six of the ten bighorn sheep herds on or part of a metapopulation associated with [core home herd ranges] on the Okanogan-Wenatchee National Forest have a stable or increasing population." ECF No. 28 at 4.

Whereas the court in *Western Watersheds Project v. Bureau of Land Management* found that there was a risk of disease transmission to the last native population of bighorns in the state, Civ. No. 09–0507–E–BLW., 2009 WL

_____

[4] The Court is aware of the District of Idaho's recent decision resolving cross-motions for summary judgment in *Western Watersheds Project v. United States Sheep Experiment Station*, Case No. 1:19-cv-00065-REB, 2021 WL 1517977 at *14 (D. Idaho Apr. 16, 2021) (finding Defendant "did not take the requisite hard look at the impacts of its domestic sheep grazing operation on bighorn sheep."). The District of Idaho noted that in the 2017 "Snakey-Kelly Action," the court was not convinced that the Forest Service's Best Management Practices ("BMPs") were effective in preventing disease transmissions "at least as to the Beaverhead herds near the Snakey-Kelly Canyons allotments." *Western Watersheds Project*, Case No. 1:19-cv-00065-REB, 2021 WL 1517977 at *14 (citing *Western Watersheds Project*, Case No. 1:17-CV-434-CWD, 2017 WL 5571574 at *13). The court's findings as to the effectiveness or ineffectiveness of the Forest Service's BMPs are limited to the facts of that case and the allotment[s] and herds at issue.

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ~ 13

3335365 at *4, here, the Quilomene, Cleman Mountain, Umtanum/Selah Butte, and Tieton herds are not native to the region; "[a]ll existing populations are the result of reintroductions."  ECF No. 26-14 at 17.  Furthermore, the bighorn population in the area at issue in *Western Watersheds Project v. Bureau of Land Management* had dropped 70% in the preceding 20 years.  2009 WL 3335365 at *2.  No similar "dramatic decline[ ] in populations in bighorn sheep" throughout the Okanogan-Wenatchee National Forest is evident here.  *Id.*  Although the Tieton herd was extirpated in 2013, the bighorn population as a whole in the area did not experience "dramatic declines," notwithstanding the continued authorization of grazing on the Wenatchee Allotments.  ECF No. 25 at 22.

### 3. *2021 Grazing Season Absent Injunctive Relief*

Martinez Livestock argues that, even if Plaintiffs could demonstrate the requisite irreparable harm, granting an injunction would not redress the injury because (a) domestic sheep grazing already occurs on state and private land; and (b) Martinez Livestock will be forced to put domestic sheep on its private land in the Wenas watershed ("Wenas Ranch") which purportedly places the domestic sheep closer to the Cleman Mountain bighorn herd's primary range than if the domestic sheep remained on the Nile allotment.  ECF No. 31 at 14–15.

"There must be a 'sufficient causal connection' between the alleged irreparable harm and the activity to be enjoined, and showing that 'the requested injunction would forestall' the irreparable harm qualifies as such a connection."

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ~ 14

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981-82 (9th Cir. 2011)).  However, a plaintiff "need not further show that the action sought to be enjoined is the exclusive cause of the injury." *M.R. v. Dreyfus*, 697 F.3d 706, 728 (9th Cir. 2012).  "Irreparable harm may be caused by activities broader than those that plaintiffs seek to enjoin." *Nat'l Wildlife Fed'n*, 886 F.3d at 819 (9th Cir. 2018).

Here, the anecdotal reports cited by Plaintiffs' expert show a causal connection between the general practice of grazing and commingling between domestic and bighorn sheep.  ECF No. 20 at 15–17 (detailing commingling incidents in other areas such as the Entiat Valley, Naneum, and state-owned allotments); *see also* ECF No. 43 at 3 ("Due to the lack of intensive monitoring, there is little [commingling] of species documented near the Wenatchee Allotments but there have been domestic sheep moving outside their allotments into bighorn habitat.").  Although grazing on the Wenatchee Allotments by Martinez Livestock need not be the exclusive cause of the alleged injury, the Court is not persuaded that "the requested injunction would forestall" irreparable harm, especially so long as grazing continues on private or state-owned land.

Furthermore, Martinez Livestock's alternate summer pasture, Wenas Ranch, is located "in very close proximity to the primary range of the Clemans bighorn sheep herd."  ECF Nos. 33 at 23, 33-11.  Plaintiffs argue that any risk to bighorns from domestic sheep on Wenas Ranch is speculative due to several unknown factors

such as "amount of sheep use and duration, fence conditions, forage conditions, the amount and type of bighorn and domestic sheep monitoring, etc." ECF No. 43 at 11. The general location for the Wenas Ranch, ECF No. 33-11, suggests it is approximately 5 miles from core herd habitat for the Cleman Mountain herd. ECF No. 43 at 11. Plaintiffs argue that "[w]hile this is certainly close enough to put the Cleman Mountain herd at an increased risk . . . that does not necessarily mean grazing there poses an increased risk compared to grazing the Nile, Rattlesnake, and Manastash allotments this summer." *Id.* at 12.

Plaintiffs' argument hinges on the need for "effective spatial separation between domestic and bighorn sheep . . . to prevent disease transmission between the species." ECF No. 18 at 12. Although distance is not the only relevant factor in analyzing the risk of domestic sheep and bighorn sheep interactions, Plaintiffs rely heavily on the proximity and/or overlap between the Wenatchee Allotments to core herd habitats in support of their argument that grazing on these allotments poses a high risk of disease transmission. ECF No. 41 at 12–13. Thus, the short distance between the Wenas Ranch and the Cleman Mountain herd home range is relevant. Similarly, the proximity of state and private-owned land is also relevant in analyzing the causal connection between the alleged irreparable harm and the activity to be enjoined, i.e., grazing by Martinez Livestock on the Wenatchee Allotments.

There is a lack of evidence that the spatial separation between domestic sheep and bighorn sheep desired by Plaintiffs will be achieved by closing the Wenatchee

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ~ 16

Allotments during the pendency of this lawsuit given the likelihood that domestic sheep will be grazed on private and state-owned lands and given the proximity of private and state-owned lands, including the Wenas Ranch, to the bighorn herd core ranges, all of which are beyond the scope of any injunctive relief and the purview of this case.

In sum, after considering the limits of the ROC model, the fact-specific context of this case, and the causal connection between grazing on the Wenatchee Allotments and the alleged harm, the Court finds that Plaintiffs have failed to show that a continuation of the status quo presents a significant threat of irreparable injury.

**B. Balance of Hardships & Public Interest**

Plaintiffs argue that the balance of the hardships and public interest strongly weigh in favor of enjoining grazing on the Wenatchee Allotments.  ECF No. 18 at 45.  The Federal Defendants argue that the Forest Service appropriately has balanced competing demands arising from multiple uses of the Forest pursuant to its multiple-use mandate.  ECF No. 25 at 38.  Martinez Livestock argues that "the economic injuries to the Martinez family and their local and regional communities outweigh the speculative harm to Plaintiffs' outdoor recreational interests to view bighorns."  ECF No. 31 at 19.

The Court agrees with Plaintiffs that there is an intrinsic public interest in preserving bighorn sheep in Washington state.  ECF No. 18 at 40.  However, there is also intrinsic public interest in allowing a community-oriented business to operate

most effectively so as to continue to provide employment opportunities, including for minority communities, as well as educational and research support to state universities.  ECF No. 31 at 20.  These corollary benefits of economic sustainability benefit the local and regional communities.  In considering these competing public interests, the balance does not tip so strongly in favor of one party over the other.

Accordingly, **IT IS HEREBY ORDERED**: Plaintiffs' Motion for Preliminary Injunction, **ECF No. 18**, is **DENIED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** April 20, 2021.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ~ 18