UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILDEARTH GUARDIANS and WESTERN WATERSHEDS PROJECT,<br><br>       Plaintiff,<br><br>  v.<br><br>KRISTIN BAIL, in her official capacity as Forest Supervisor of the Okanogan- Wenatchee National Forest, and U.S. FOREST SERVICE,<br><br>       Defendants,<br><br>  and<br><br>S. MARTINEZ LIVESTOCK, a Washington Corporation,<br><br>       Defendant-Intervenor. | NO: 2:20-CV-0440-TOR<br><br>ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (ECF No. 65), the Forest Service Defendants' Cross-Motion for Summary Judgment (ECF No. 69), and Defendant-Intervenor's Cross Motion for Summary Judgment

ORDER GRANTING DEFENDANTS'MOTIONS FOR SUMMARY JUDGMENT ~ 1

1  (ECF No. 71). The motions were previously set for hearing with oral argument
2  (ECF No. 79), but the Court has determined oral argument is unnecessary pursuant
3  to LCivR 7(i)(3)(B)(iii). Accordingly, the Court vacates the hearing set for
4  September 22, 2022, as moot and because the present motions deserve a prompt
5  disposition. The Court has reviewed the motions and the record, the completed
6  briefing and is fully informed.
7       For the reasons discussed below, Defendants' Motions for Summary
8  Judgment are **GRANTED.**

## BACKGROUND

10  This case concerns Plaintiffs WildEarth Guardians' and Western Watersheds
11  Project's challenge to the U.S. Forest Service's authorization of domestic sheep
12  grazing on allotments within the Okanogan-Wenatchee National Forest. Plaintiffs
13  complain that grazing on these allotments poses a high risk that domestic sheep
14  will come into contact with and transmit disease to bighorn sheep, which can
15  happen quickly and lead to die-offs of bighorn sheep herds. WildEarth Guardians
16  is a non-profit organization dedicated to protecting and restoring the wildlife, wild
17  places, wild rivers and health of the American West and has over 188,000
18  members. Western Watersheds Project is a non-profit membership organization
19  dedicated to protecting and conserving the public lands and natural resources of
20  watersheds in the American West and has over 12,000 members and supporters.

Plaintiffs contend that there is a high risk of disease transmission between domestic sheep and bighorn sheep herds, affecting the latter population's viability. Plaintiffs allege that despite being aware of these risks, the Forest Service has continued to authorize grazing on the Wenatchee Allotments, rather than closing these allotments, while new environmental analyses are completed. ECF No. 65. Plaintiffs argue that by continuing to authorize domestic sheep grazing, the Forest Service has violated its duties under the National Forest Management Act (NFMA) to protect bighorn sheep populations, and its duties under National Environmental Policy Act (NEPA) to supplement outdated analyses and prevent an irreversible commitment of resources in the interim. *Id*. Plaintiffs have stated the following claims for relief pursuant to the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 706:

> Claims 1 and 3: Challenge to the Forest Service's annual operating instructions (AOIs) that authorized domestic sheep grazing on the Nile, Rattlesnake, Manastash, and Mosquito Ridge allotments in 2016–2021, which was inconsistent with the Wenatchee Forest Plan and violated the NFMA and NEPA;[1] and

> Claim 2: Challenge to the Forest Service's failure to supplement its environmental analyses for the allotment management plans

---

[1] On their face, these claims appear to be moot, but according to the Ninth Circuit, "A controversy remains live so long as effective relief is still available." *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1094 (9th Cir. 2003).

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 3

(AMPs) that govern domestic sheep grazing on the Okanogan-Wenatchee National Forest, in violation of the NEPA.

*See* ECF No. 65 at 6.

The Federal Defendants contend Plaintiffs lack standing because there is no causal connection between their alleged injury and the Forest Service's conduct. Specifically, the Forest Service contends that animals grazing on state-owned and private lands, lawful hunting, and relocation of bighorn sheep by the Washington Department of Fish and Wildlife, is the cause for any complained of injury, none of which is controlled by the Forest Service. Additionally, there is no evidence showing that a disease outbreak among bighorns has been caused by domestic sheep from the federally managed allotments, as opposed to domestic sheep on private or state-owned land. ECF No. 69 at 22-25. The Federal Defendants further contend that the Forest Service's best management practices have effectively mitigated the risk of disease transmission. ECF No. 69 at 28-32. But most importantly, the Forest Service contends that the Federal Land Policy and Management Act precludes Plaintiffs' claims because the Forest Service has been delegated the timing of its NEPA review, which is not subject to judicial intervention. ECF No. 69 at 34-40. The Forest Service also seeks to strike extra-record evidence.

Defendant-Intervenor S. Martinez Livestock essentially joins in the Forest Service's substantive arguments. ECF Nos. 71, 78.

## STANDARD OF REVIEW

A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Agency decisions that allegedly violated NFMA and NEPA are reviewed under the APA. *All. for the Wild Rockies v. United States Forest Serv.*, 907 F.3d 1105, 1112 (9th Cir. 2018). The APA imposes a deferential standard of review, which is limited to a determination of whether the agency acted in a manner that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.*; *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (citing 5 U.S.C. § 706(2)(A)). Under this standard, courts "do not substitute [their] judgment for that of the agency.'" *Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1013 (9th Cir. 2012). Review is limited to the administrative record before the agency decision-maker. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985). The factfinding capacity of the district court is thus typically unnecessary to judicial review of agency decision making. *Id.* at 744. A decision should only be reversed as arbitrary and capricious "if the agency relied on factors Congress did not intend it to consider, entirely failed to consider

an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).

"When a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the agency." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d at 602 (quoting *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir.1980)). Expansion of the administrative record is only allowed in four narrowly construed circumstances:

> (1) supplementation is necessary to determine if the agency has considered all factors and explained its decision;
> (2) the agency relied on documents not in the record;
> (3) supplementation is needed to explain technical terms or complex subjects; or
> (4) plaintiffs have shown bad faith on the part of the agency.

*San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d at 603 ("Keeping in mind the Supreme Court's concerns with reviewing court factfinding, we have approached these exceptions with caution, lest "the exception . . . undermine the general rule." (citation omitted)).

//

**DISCUSSION**

Plaintiffs' Motion for Summary Judgment (ECF No. 65) seeks a declaration that the Forest Service violated NEPA and NFMA by continuing to allow grazing on the Nile, Rattlesnake, Manastash, and Mosquito Ridge allotments before completing a new NEPA analysis. ECF No. 65 at 39-40. In their reply, however, Plaintiffs revise their claim to say that their "claim is not that the agency must 'refuse renewal of a grazing permit' or must stop grazing simply because the agency has not completed a routine NEPA analysis here. . . . Instead, Plaintiffs argue that the agency may not hide behind this 'limited grace period' to avoid studying the known risks and consequences of grazing on the Wenatchee Allotments." ECF No. 73 at 25.

Plaintiffs further argue that "[t]he Court should thus not permit the agency to indefinitely postpone completing the necessary supplemental NEPA analysis to address the conflicts between domestic and bighorn sheep on the Forest and instead should order the agency to conduct that analysis under the process and timeline stated in the Bail Declaration." ECF No. 73 at 25.

**I.    Federal Land Policy and Management Act (FLPMA)**

The Forest Service contends that the Federal Land Policy and Management Act precludes Plaintiffs' claims because the Forest Service has been delegated the timing of its NEPA review, which is not subject to judicial intervention. In the

meantime, the Forest Service shall continue a permit or lease until a decision has been made on any supplemental environmental analysis.

In 2014, Congress amended the Federal Land Policy and Management Act to specifically provide the following subsection:

(i)     Priority and timing for completion of environmental analyses

The Secretary concerned, in the sole discretion of the Secretary concerned, shall determine the priority and timing for completing each required environmental analysis with respect to a grazing allotment, permit, or lease based on—
(1)the environmental significance of the grazing allotment, permit, or lease; and
(2)the available funding for the environmental analysis.

43 U.S.C. § 1752(i).

Subsection 1752(c)(2) provides: The terms and conditions in a grazing permit or lease that has expired, or was terminated due to a grazing preference transfer, **shall** be continued under a new permit or lease until the date on which the Secretary concerned completes any environmental analysis and documentation for the permit or lease required under the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.) and other applicable laws (emphasis added).

A NEPA analysis is not required to be completed before a permit is renewed. W. *Watersheds Project v. Bernhardt*, 392 F. Supp. 3d 1225, 1249 (D. Or. 2019). This is not, however, an exemption or exclusion from the requirements of NEPA or other applicable laws. *Id*. This provision merely allows for a "limited

1  grace period" for the agency to conduct the required environmental analysis. *Id.*
2  (citations omitted). After the required environmental review is completed, permits
3  may then be canceled, suspended, or modified. *Id.* Plaintiffs seem to agree with
4  these basic principles but seem to want the Court to carve out exceptions. ECF No.
5  73 at 21.

6  The Forest Service acknowledges that it will be conducting supplemental
7  NEPA analysis and explains that the delay so far was the result of resource
8  constraints, loss of key staff members, and historic wildfires that pulled employees
9  away from their normal duties. The Forest Service argues that it is comfortably
10 within the grace period conferred by § 1752(i) and an order from this Court on
11 priority and timing would expressly be violative of what Congress delegated solely
12 to the agency.

13 Plaintiffs complain that the "agency's track record of broken promises"
14 make it likely that the agency will extend this process again and again. Plaintiffs
15 argue that the "agency's estimated delay is unreasonable given the risk . . ." ECF
16 No. 73 at 24.

17 Given the unequivocal Congressional delegation, the Court concludes that at
18 this time, the Court does not have the authority or jurisdiction to set the priority
19 and timing of such supplemental review. 43 U.S.C. § 1752(i) ("the sole discretion
20 of the Secretary concerned, shall determine the priority and timing for completing

each required environmental analysis with respect to a grazing allotment, permit, or lease"). The Forest Service has acknowledged its responsibilities and has begun the process of a supplemental environmental review.

Accordingly, Plaintiffs' challenge is premature and not properly before the Court. Because the Forest Service has not completed its final analysis, there is no final decision for this Court to review at this time.

## II. Article III Standing

Given the disposition of this case, the Court does not specifically rule on whether Plaintiffs have Article III standing by merely alleging a risk of harm without proving actual harm based on Defendants' conduct.

## III. Request to Strike Declarations

Given the disposition of this case, the Court has not considered the extra-record Declarations filed by Plaintiffs in support of their arguments.

## CONCLUSION

Defendants have demonstrated there is no genuine issue of material fact and Plaintiff's claims fail at this time as a matter of law.

**ACCORDINGLY, IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment (ECF No. 65) is **DENIED**.
2. The Forest Service Defendants' Cross-Motion for Summary Judgment (ECF No. 69) is **GRANTED**.

3. Defendant-Intervenor's Cross Motion for Summary Judgment (ECF No. 71) is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and Judgment accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED June 7, 2022.



THOMAS O. RICE
United States District Judge